**NCNB TEXAS NATIONAL BANK,**
**Plaintiff–Appellee,**

v.

**SOUTHWOLD ASSOCIATES, and**
**Venro Realty Corporation,**
**Defendants–Appellants.**

No. 90–1005
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Aug. 15, 1990.

J. Hoke Peacock, II and Lance Fox, Orgain, Bell & Tucker, Beaumont, Tex., for defendants-appellants.

Robb L. Voyles and Robert W. Teeter, Baker & Botts, Dallas, Tex., for NCNB.

Before POLITZ, DAVIS, and BARKSDALE, Circuit Judges.

POLITZ, Circuit Judge:

Southwold Associates and Venro Realty Corporation appeal the grant of a preliminary injunction in favor of NCNB Texas National Bank and the court's subsequent denial of their motion to reconsider. Finding that intervening events have rendered the appeal moot we dismiss same and remand for such further action as the district court may deem appropriate.

*Background*

Peoples National Bank of Tyler, NCNB's predecessor in interest, owned two adjacent tracts of land in Tyler, Texas, one vacant and one occupied by an office building (the Old Building). In 1978 Peoples and Jasfer Realty Corporation entered into a "lease and leaseback" arrangement to build a new 19–story office building (the New Building) on the vacant tract which would connect to the Old Building. Peoples leased the land to Jasfer (the Master Lease), which simultaneously sublet the land and the building to be constructed back to Peoples (the Sublease). Peoples and Jasfer also simultaneously executed a purchase option agreement in Jasfer's favor with respect to the land and New Building and a restrictive covenant agreement with respect to the adjacent tract and Old Building.

Jasfer's interests under the Master Lease, the Sublease, the purchase option, and the restrictive covenant were transferred to appellants. In order to finance construction of the New Building, appellants borrowed $11,400,000 from Principal Mutual Life Insurance Company. Appellants executed a deed of trust granting Principal a first lien on its interests in the land and the New Building; Peoples also executed the deed of trust, giving Principal a first lien on Peoples' fee simple interest in both the land and the New Building. The New Building was constructed and connected to the Old Building. Both buildings share a common heating, cooling, and electrical system located primarily in the New Building.

Through a series of mergers and acquisitions the assets of Peoples, including the

two tracts of land, became vested in First Republic Bank Tyler, N.A. First Republic cratered and the FDIC as receiver acquired all of its assets. Retaining First Republic's interests in the Master Lease and the Sublease, the FDIC transferred its fee simple interests in the two tracts to NCNB under a purchase and assumption agreement. NCNB occupied the New Building, paid rent, managed it, and paid its operating expenses pursuant to the Sublease. NCNB's total rental payments exceeded the fair rental value of the space it occupied.

Between April and May 1989 the FDIC disaffirmed both the Master Lease and the Sublease. NCNB offered to either pay appellants at the market rental rate until it could find alternative offices or to enter into a new lease agreement at the market rental rate. Appellants rejected the offers, insisting that NCNB continue to pay the rent as provided for in the disaffirmed Sublease.

On May 12 appellants informed NCNB that it considered the Master Lease terminated, intended to exercise its option to purchase the subject property and the New Building for $100.00 as provided in the option agreement, and intended to seal off the New Building from the Old Building pursuant to the terms of the restrictive covenant agreement. Ten days later they reiterated their threat to "seal off" the New Building, adding that "[u]pon completion of this process, all adjoining property owners will be denied access to utility connections, HVAC systems, and other amenities located on the ... property." On May 31 Southwold attended a closing at which it paid the $100.00 option price to an escrow agent. NCNB did not attend the closing and did not convey title to appellants.

NCNB sought a declaratory judgment as to the fee title ownership and sought a preliminary injunction.[1] Appellants counterclaimed for specific performance of the option agreement. The district court granted NCNB a temporary restraining order, followed by entry of a preliminary

injunction, ordering appellants to refrain from acting to obtain possession of the property, or to in any way affect NCNB's occupancy, use, enjoyment of and access to, and maintenance of the New Building, or its use and enjoyment of and access to the utilities and services located therein for the benefit of the Old Building. Appellants timely appealed.

We do not address the propriety of the entry of the preliminary injunction because intervening events have rendered this issue moot. As both appellants and appellee point out, Principal, with leave of court, has foreclosed its lien on the land and the New Building, thus extinguishing the interests of both sides to this dispute.

Inasmuch as "[n]o order of this Court could affect the parties' rights with respect to the injunction we are called upon to review," *Marilyn T., Inc. v. Evans*, 803 F.2d 1383, 1384 (5th Cir.1986) (quoting *Honig v. Students of the California School for the Blind*, 471 U.S. 148, 149, 105 S.Ct. 1820, 1821, 85 L.Ed.2d 114 (1985)), we lack jurisdiction to either affirm or vacate the injunction. *Bailey v. Southerland*, 821 F.2d 277, 278 (5th Cir.1987). The appeal is DISMISSED and the matter is REMANDED for such further action as the district court may deem appropriate.

---

1. Southwold simultaneously filed a complaint for forcible entry and detainer in Texas state

